*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TREFIL/WIGGINS, Minors.

UNPUBLISHED
August 11, 2026
9:33 AM

No. 378697
Montcalm Circuit Court
Family Division
LC No. 2024-001124-NA

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her three minor children, AJT, AMT, and HLW, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication),[1] (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm to child if returned to parent).[2] Respondent argues that the trial court erred by finding that it was in the children's best interests to terminate respondent's parental rights. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On August 14, 2024, the Montcalm Department of Health and Human Services (DHHS) filed a petition alleging that respondent had recently been arrested and lodged in the Montcalm County Jail and that the children came under the trial court's jurisdiction under MCL 712A.2(b)(1)

---

[1] Although the trial court did not specify that it was terminating under Subsection (3)(c)(*i*), the context of the case and the court's findings make it clear that this Subsection was one of the grounds for termination.

[2] Respondent is the biological mother to all three children. AJT and AMT are twins; their biological father was reported deceased as of September 2019. HLW's biological father was also named as a respondent in these proceedings. His parental rights were terminated in the same order as respondent's, but he is not a party to this appeal.

-1-

and (2). The DHHS requested that the trial court authorize the petition, exercise jurisdiction over the children, and place them into the DHHS's care and custody.

At the preliminary hearing, respondent waived probable-cause findings. The trial court found that respondent had "a serious substance abuse issue," noting that she had tested positive for methamphetamine and amphetamines while the children were in her care and custody. The trial court also found that respondent failed to meet HLW's medical needs and that the children faced a substantial risk of harm if returned to her care. The court authorized the petition, ordered that the children be removed from respondent's care, and granted respondent two hours of weekly parenting time. The DHHS placed all three children with the twins' paternal grandfather.

At the adjudication hearing, respondent admitted that she had not participated in regular and consistent meetings with Children's Protective Services. The trial court found that a preponderance of the evidence, along with respondent's probable-cause waiver, established statutory grounds for the trial court to exercise jurisdiction.

After an initial dispositional hearing in October 2024, the trial court reduced respondent's parenting time to one supervised hour a week after it was reported that she was not complying with the services offered to her and that she was openly hostile toward the service providers and the lawyer-guardian ad litem (LGAL). The court ordered that she comply with, and benefit from, the case service plan and that she submit to random drug screens.

The trial court conducted review hearings in January, April, and July 2025, each time finding that respondent had failed to make any progress in her case plan, failed to comply with the case plan, and failed to engage with the services offered to her. Respondent had tested positive for methamphetamine several times and had not completed several other drug screens. She was not present for the April hearing because she was in jail on a bond violation for a previous arrest for possession of methamphetamine. She appeared remotely for the July hearing, and the trial court surmised that she had decided not to appear in person to avoid being arrested on an outstanding bench warrant out of Mecosta County.

In October 2025, petitioner filed a supplemental petition alleging that the children came within the trial court's jurisdiction under MCL 712A.2(b)(1) and (2) and seeking termination of respondent's parental rights under MCL 712A.19b(3)(c), (g), (j).

In November 2025, the trial court conducted a termination hearing. Respondent did not attend but was represented by counsel. The trial court believed that respondent was "very well aware that if she appeared here today, she'd get arrested on those outstanding bench warrants and that probably is why we don't have her address or her contact information." According to DHHS caseworker Shelbie Williams, respondent originally claimed that she would cooperate with services, but she never followed through. Respondent's Parent-Agency Treatment Plan noted that respondent's barriers included substance abuse, poor parenting skills, unstable housing, emotional instability, domestic violence, and unstable employment. She had not resolved any of those barriers. Regarding the children's best interests, Williams thought that the children deserved stability, permanency, and parents who could meet their needs. Williams believed that respondent could not do that, given her inability to follow through with services.

The trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g) and (j). When it addressed the children's best interests, the court reasoned as follows:

I agree with the assessment of the guardian ad litem as well as the testimony from the caseworker assigned to this case, Ms. Williams, that these children need stability and permeance. Since the mother was incarcerated—I believe it was in March of '25—that she has not seen the children. She hasn't filed a motion to request reinstatement of her parenting time.[3] She has not asked to visit the child— or children and she's not making any effort—efforts to support these children financially, emotionally, or mentally and leaving those aspects of their care to other people. I can't help but find that—that the bond would be diminished between the children and the mother as a result of her failure to connect with those children since March of '24 (sic). Um, she hasn't exhibited any parenting skills to the satisfaction of this Court and most importantly, is her continued criminal involvement. She just keeps getting arrested for methamphetamine use on at least two occasions. She could be arrested any second on any—on this bench warrant out of Mecosta County.

Mental health issues clearly have not been addressed, all of which she had an opportunity to do and show to the Court and to her children that she could reunite successfully with them and provide a stable, steady home for them. And I think it's telling really that since she was released from jail, she hasn't requested any parenting time with these kids. That just shows a total lack of involvement with them.

With regards to the fact that the children are—the two—well, all three children are placed with, um, [AJT and AMT's paternal grandfather]. I'm also finding that the fact they're in a relative placement doesn't change any of my findings with regards to the children's best interests. I again reiterate that the children need permanence and stability and it appears—and the Court is satisfied that they have that permanence and stability at this time in the home with the grandfather, um, and that would include the [HLW] child as well. These—these children need permanence and they need stability. They need to know where their next meal is coming from. They need to know who's going to be taking care of them. They need to know who's going to be there for them in the long run and the long-term. They can't have a mom running in and out of their life, or not even being in their life for six, eight, nine months and showing a complete lack of any love or affection for the children and not trying to reunite with them in any way. So I considered the fact that they're with a relative and, um, I still agree that it is in the best interests of the children to have the mother's parental rights terminated.

---

[3] Respondent-mother did move to reinstate her parenting time in June 2025, but she later withdrew the motion without explanation.

The trial court terminated respondent's parental rights to the children, and this appeal followed.

## II. BEST INTERESTS

Respondent argues that the trial court erred by finding that it was in the children's best interests to terminate respondent's parental rights. We disagree.

### A. STANDARD OF REVIEW

"Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). A trial court's dispositional choices, such as a child's best interests, are reviewed for clear error. See MCR 3.977(K); *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

### B. ANALYSIS

In addition to finding statutory grounds for termination,[4] the trial court must also find that termination is in the child's best interests before ordering the termination. MCL 712A.19b(5). The trial court should consider all the evidence when making a best-interest determination, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2010). "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App at 346 (quotation marks and citation omitted). The trial court must also consider a child's placement with relatives. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43.

In making its best-interest determination, the trial court considered that the children shared a bond with respondent and had expressed a desire to return to her care, but respondent had failed to participate in parenting classes and Foster Care Supportive Visitation services. See *In re White*, 303 Mich App at 713. Respondent was also referred to domestic-violence counseling but never attended. The court found that she had made "no progress" in her mental-health issues, substance-abuse issues, or parenting skills. When the children were initially removed, substance abuse, parenting skills, unstable housing, emotional instability, domestic violence, and unstable employment were identified as respondent's barriers. Since the children's removal, the trial court found that respondent had been arrested twice for possession of methamphetamine, failed to

---

[4] Respondent-mother does not challenge the statutory grounds for termination. We therefore may presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo*, 462 Mich 341 (2000).

complete the necessary paperwork for services, and refused to provide her address to the DHHS or allow her home to be assessed for appropriateness. The court found that she had failed to support her children financially, emotionally, and mentally. The trial court also explicitly found that the children's relative placement did not affect its best-interest analysis. See *In re Gonzales/Martinez*, 310 Mich App at 434. There were some concerns regarding the grandfather's ability to care for the children in the long-term, but placement with him was certainly preferable to placement with respondent, who had not even attempted to see her children for the past several months.

Although respondent adequately participated in parenting time "for a while," the trial court found that respondent quickly became "very inconsistent in her parenting time, causing additional stress and trauma to the girls when she didn't appear." The DHHS reported that the children recognized that respondent made "poor decisions." Respondent contends that the trial court should have allowed her "more time to work services and eliminate barriers," but it is the children's best interests, not respondent's best interests, that govern whether termination was proper. See *In re Atchley*, 341 Mich App at 346. The facts of this case demonstrate that the children's bond with respondent was at risk of deteriorating because of respondent's lack of contact with them, and the children were still at risk of neglect and physical or emotional harm because of respondent's methamphetamine abuse, housing instability, and involvement in relationships troubled by domestic violence. Taking as a whole, a preponderance of the evidence supports that termination of respondent's parental rights was in the children's best interests. See *In re White*, 303 Mich App at 713.

Respondent argues that the trial court should have considered establishing a guardianship with the grandfather as an alternative to termination. But this argument contradicts the record; a guardianship was considered and ruled out as a viable option. When asked if she addressed or considered guardianship for the children, Williams responded in the affirmative. And when asked why it was ruled out, Williams responded, "I believe multiple permanency options have been discussed with the relatives and it is—is currently a work in progress." Williams then confirmed that, nevertheless, her recommendation was termination. The LGAL also explained that a guardianship was not appropriate for this case:

> The Court has rightly chose not to entertain a long-term guardianship in this context recognizing that it would perpetuate this damaging limbo without providing true permanence to these children. With the reunification demonstrably foreclosed by the parents' own choices, termination of parental rights is just not an option, it's the only remaining pathway to safeguard these girls' future and secure their stability and permanence.

Additionally, in her closing arguments, respondent's counsel urged the trial court to consider guardianship given that the children were in the care of relatives. And although the trial court did not expressly comment on the option for a guardianship in its ruling, it did acknowledge that the children were placed with their paternal grandparents and nevertheless found that the relative placement did not change the court's determination that termination was in the children's best interests.

Furthermore, the trial court was not bound to place the children in a guardianship merely because they were in a relative placement. See *In re Simpson*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 6 ("[R]espondent's argument that a guardianship should have been established was not persuasive because no one petitioned the trial court for a guardianship and there is no suggestion in the record that the [caregiver] with whom [the minor child] was placed would have agreed to that arrangement.") (quotation marks and citation omitted; alterations in original). In this case, respondent did not petition the court for a guardianship, and there was no indication in the record that the grandparents would have agreed to a guardianship placement. A preponderance of the evidence supported that it was in AJT's, AMT's, and HLW's best interests to terminate respondent's parental rights, and the trial court did not clearly err by terminating respondent's parental rights instead of ordering a guardianship.

Affirmed.

/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin